IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPER DESALVO, )<br>  )<br>　　　　Plaintiff, )<br>  )<br>vs. )<br>  )<br>CITY OF COLLINSVILLE, ILLINOIS, )<br>and MARK KRUG, )<br>  )<br>　　　　Defendants. ) | Case No. 04-cv-0718-MJR |

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

    **A.**    **Procedural History**

On September 3, 2004, Christopher DeSalvo filed a complaint in the Circuit Court of Madison County, Illinois, against Collinsville Police Officer Mark Krug and the City of Collinsville, Illinois. DeSalvo's complaint asserts claims against both Collinsville and Krug for depriving him of his constitutional rights in violation of **42 U.S.C. § 1983**. On October 7, 2004, Defendants timely removed the action to this Court, pursuant to **28 U.S.C. §§ 1331** and **1441,** based on this Court's federal question jurisdiction. Now pending before this Court are summary judgment motions filed by Defendant Krug and Defendant Collinsville.

    **B.**    **Factual Background**

On September 4, 2003, DeSalvo traveled to Collinsville, Illinois for the annual "Monster MOPAR" weekend at Gateway International Raceway (DeSalvo Deposition, pp. 20-21). On September 6, at approximately 5:00 p.m., Desalvo returned from the car show to the Collinsville Holiday Inn, where he was registered as a guest (DeSalvo Dep. p. 26). Upon his return, DeSalvo ate

dinner and then hung out in the Holiday Inn parking lot, where approximately 100-150 people were gathered (DeSalvo Dep. p. 26). In the parking lot, members of the crowd were doing "burn outs," spinning the tires of their cars until they produced smoke (DeSalvo Dep. p. 27). Between 5:00 p.m. and 8:00 p.m., DeSalvo consumed three beers (DeSalvo Dep. p. 25).

At approximately 6:00 p.m., Officer Krug was dispatched to the Holiday Inn due to a complaint of vehicles burning tires in the back parking lot (Krug Dep. pp. 8-11, Fingerhut Dep. p. 8). Krug responded to the call and drove through the parking lot where he observed the crowd of people (Krug Dep. p. 8-11). DeSalvo observed Krug driving through the parking lot at that time but did not see any other officers in the vicinity until the time of his arrest (DeSalvo Dep. p. 29).

At approximately 9:30 p.m., Krug returned to the parking lot and observed that a crowd of approximately 150 people was still congregated there (Krug Dep. p. 13). At that time, Krug ordered the crowd to disperse and radioed for assistance (Krug. Dep. p. 25). Responding to his order, the crowd began dispersing (DeSalvo Dep. p. 36).

As the crowd was disbursing, Krug approached an older man who had remained in the lot and was not immediately leaving (Krug Dep. p.17). Krug asked the man for identification (Krug. Dep. p. 17). In response, the man turned to leave the parking lot and was walking back toward the Holiday Inn, where he had informed Krug that he had a room (Krug. Dep. p. 17). Rather than allowing the man to return to his room, Krug grabbed him by the arm and again requested the man's identification (Krug. Dep. p. 17). In compliance with Krug's request, the man reached into his wallet and produced identification (Krug's Dep. p. 20).

Meanwhile, DeSalvo, who was returning to his hotel room, noticed Krug and the older man's interaction (DeSalvo Dep. pp. 41-42). As DeSalvo passed the two men, he questioned Krug

as to why he was arresting someone who, in DeSalvo's opinion, had done nothing illegal (DeSalvo Dep. pp. 41-42). DeSalvo told Krug that "nobody is doing anything illegal, we are having a good time, leave us all alone" (Krug Dep. p. 23). Krug replied that if DeSalvo didn't return to his room, he would be arrested for "obstructing" (Krug. Dep. p. 24). DeSalvo countered that he hadn't done anything wrong (DeSalvo Dep. p. 42). Krug then told DeSalvo to place his hands behind his back, handcuffed DeSalvo, and pushed him up against a squad car (DeSalvo Dep. pp. 41-42).

With his hands handcuffed behind his back, DeSalvo turned to Krug and asked him why he was being arrested (DeSalvo Dep. p. 43, Krug Dep. p. 24). Krug responded that he didn't have to tell DeSalvo why he was being arrested and ordered him to get into the car (DeSalvo Dep. p. 43). DeSalvo again complained to Krug that he had done nothing wrong and asked him again why he was being arrested (DeSalvo Dep. p. 43). In response, Krug removed his taser from its holster and test fired the taser in the air near DeSalvo's head, telling DeSalvo that he would "pull the trigger" if DeSalvo did not get into the squad car (DeSalvo Dep. p. 44, Krug Dep. p. 30). Immediately thereafter,[1] Krug placed the taser to DeSalvo's neck and activated it, shocking DeSalvo (Krug Dep. pp. 30-31). As DeSalvo turned toward the car, Krug placed the taser to DeSalvo's forehead and threatened to tase him again if he did not get in the car (DeSalvo Dep. p. 45). Before DeSalvo entered the car, Krug again activated the taser near or against DeSalvo's forehead (Exhibit H to Doc. 27).

Notably, the interaction between Krug and DeSalvo took place next to a police squad car that was part of a group of at least four squad cars (*id.*). While DeSalvo and Krug were

---

[1] An amateur videotape of the incident, reviewed by the Court, reveals that only approximately six seconds elapsed between Krug's "test-fire" of the taser and the activation of the taser upon DeSalvo's neck. (Exhibit H to Doc. 27).

interacting, a male and a female officer stood immediately next to the two men, and at least two other officers were within twenty feet of the two men (*id.*). Before being tased, DeSalvo stood motionless at the door of the squad car, showing no obvious signs of aggression or physical resistance (*id.*).

### C. Analysis

DeSalvo's September 3, 2004, complaint asserts two separate claims, one against Krug and one against the City of Collinsville. The Court considers each in turn.

### (1) DeSalvo's Claims Against Krug:

In Count I, DeSalvo claims that Krug, while working as a police officer for the City of Collinsville, deprived him of his constitutional rights in violation of **42 U.S.C. § 1983**.

<u>APPLICABLE LEGAL PRINCIPLES</u>

Section 1983 provides a federal cause of action for violation of an individual's constitutional civil rights under color of state law. The *prima facie* requirements for a § 1983 cause of action differ depending upon the manner in which the plaintiff alleges his constitutional rights were violated. DeSalvo alleges that Krug violated his constitutional rights in two ways: (a) Krug arrested him without cause or provocation, thereby depriving him of his right to be free from unreasonable search and seizure of his person, and (b) Krug used excessive force against him during the course of his arrest, thereby depriving him of his constitutional right to be free from cruel and unusual punishment.

*Unlawful Arrest Theory*

To establish a *prima facie* case in a § 1983 action based on an officer's unlawful arrest, a plaintiff must prove by a preponderance of the evidence that his arrest was carried out in the absence of probable cause. ***See Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989)(the**

4

**existence of probable cause for an arrest is an absolute bar to a 1983 claim for unlawful arrest).**
The probable cause standard is incapable of precise definition, because it deals with probabilities and depends upon the totality of the circumstances. *Maryland v. Pringle,* **540 U.S. 366***,* **371 (2003),** *citing Brinegar v. United States,* **338 U.S. 160, 175 (1949).** However, the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and the belief must be particularized with respect to the person to be searched or seized. *Ybarra v. Illinois,* **444 U.S. 85, 91 (1979).**

*Excessive Force Theory*

To establish a *prima facie* case in a § 1983 action based on a police officer's use of excessive force, a plaintiff must prove by a preponderance of the evidence that the force used was so unreasonable in light of the circumstances of the arrest as to violate the constitutional rights of the plaintiff to be free from such treatment. *See Graham v. Connor,* **490 U.S. 386 (1989);** *Deering v. Reich,* **183 F.3d 645 (7th Cir. 1999).**

Determining whether the force used by an officer is constitutionally "reasonable" requires a balancing of the nature and quality of the intrusion on the individual's constitutional interests against the countervailing government interests at stake. *Graham,* **490 U.S. at 396.** This demands careful attention to the facts and circumstances of the particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.*

<u>KRUG'S ARGUMENTS FOR SUMMARY JUDGMENT</u>

In moving for summary judgment, Krug asserts (a) that he is shielded from liability under the doctrine of qualified immunity, and (b) alternatively, that summary judgment is appropriate

because no genuine issues of material fact remain, and Krug is entitled to judgment as a matter of law.

*Qualified Immunity Analysis*

The doctrine of qualified immunity is an "entitlement [for certain government officials] not to stand trial or face the other burdens of litigation" ***Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).** As such, it is important for a Court to resolve any immunity questions at the earliest possible stage in litigation. ***Hunter v. Bryant,* 502 U.S. 224, 227 (1991).** Although the respective analyses are similar, the requisite analysis to determine qualified immunity is not so intertwined with the constitutional violation issues so as to be treated as one question. ***Saucier v. Katz,* 553 U.S. 194, 197 (2001).** Accordingly, before considering Krug's second argument for summary judgment, this Court must first conduct a separate analysis of Krug's qualified immunity assertion.

"A court required to rule upon the qualified immunity issue must first consider whether, [t]aken in the light most favorable to the party asserting the injury..., the facts alleged show the officer's conduct violated a constitutional right." ***Saucier,* 553 U.S. at 201.** Taking the facts in this case in the light most favorable to DeSalvo, the Court finds that Krug's actions violated DeSalvo's constitutional rights.

DeSalvo asserts that he was arrested by Krug simply for inquiring as to why another man was being arrested. In light of the fact that Krug himself has admitted that the older man was attempting to leave the parking lot immediately before being detained by Krug, DeSalvo's questions seem altogether reasonable. And even if DeSalvo's questioning of Krug could be considered unreasonable, DeSalvo's inquiries nonetheless certainly were not sufficient to provide Officer Krug

with a "reasonable belief of guilt, particularized [towards Desalvo]." *Ybarra,* **444 U.S. at 91.** Lacking probable cause, Krug's arrest of DeSalvo would be a violation of his constitutional right to be free from unreasonable search and seizure of his person under the Fourth and Fourteenth Amendments to the United States Constitution.

Moreover, DeSalvo asserts that Krug tased him on his neck solely because he persisted in asking why he was being arrested. He further maintains that he was not physically resisting or struggling with Krug in any manner. Assuming that these assertions are true, Krug's use of a taser on DeSalvo constituted excessive force that deprived DeSalvo of his constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Constitution.

If, as in this case, a violation of a plaintiff's constitutional rights can be made out on a favorable view of the plaintiff's submissions, the next step in a qualified immunity analysis is to determine whether the rights were "clearly established." *Saucier,* **533 U.S. at 201.** This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* "The right the official is alleged to have violated must have been 'clearly established' in a... particularized and relevant sense: [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* **at 202,** *citing Anderson v. Creighton,* **483 U.S. 635, 640 (1987).** "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Saucier,* **533 U.S. at 202.**

The right of a citizen to be free from a search or seizure in the absence of probable cause is a clear and long-established right. The Court does not seriously entertain an argument that a reasonable police officer would be unaware of this right, nor does Krug propose such an argument.

Krug does argue, however, that a citizen's right to be free from being tased is not a clearly established right, in that there is no clearly analogous case specifically establishing a right to be free from tasing. While this may or may not be the case, this Court finds that Krug's argument implicitly asserts a definition of DeSalvo's right that exceeds the appropriate level of specificity. *See Wilson v. Layne,* **526 U.S. 603, 615 (1999)(in a qualified immunity analysis "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").**

DeSalvo's right in this case, defined at an *appropriate* level of specificity, poses to the Court a broader question: does a restrained person have a right to be free from a significantly violent level of force if he is, while perhaps not fully compliant with an officer's orders, acting in an otherwise peaceable manner? In answering *this* question, the Court finds the fact that Krug used a taser to inflict pain upon DeSalvo, rather than some other weapon, is of diminished importance. A taser is capable of inflicting a great deal of pain upon a person -- shocking, burning, and even rendering numb its target -- and is, in this sense, little different than a nightstick, mace, or any other weapon that a police officer might use against an adversary.

A reasonable officer in the situation Krug confronted would have known that it would be unlawful to deliver a swift blow with a night stick to the back of DeSalvo's neck as he stood handcuffed at the rear of the squad car. A reasonable officer would also have known that spraying mace in the face of DeSalvo under the circumstances would be unlawful. So too, then, this Court finds, a reasonable officer in Krug's position would have known that it would be unlawful to tase DeSalvo under the circumstances of this case. Accordingly, the Court concludes that the rights of DeSalvo that Krug allegedly violated were "clearly established" at the time of DeSalvo's arrest.

8

Therefore, the Court rejects Krug's qualified immunity argument.

*Summary Judgment Analysis*

Krug further argues that even if he is not entitled to qualified immunity, summary judgment is nonetheless proper in this case because there is no genuine issue as to any material fact and Krug is entitled to judgment as a matter of law.

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **FED. R. CIV. P. 56(c).** The moving party bears the burden of establishing both the absence of fact issues and entitlement to judgment as a matter of law. ***Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).**

In determining whether a genuine issue of material fact exists, the Court reviews the record in the light most favorable to the non-moving party and makes all reasonable inferences in the non-movant's favor. ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ulichny v. Merton Community School Dist.*, 249 F.3d 686, 699 (7th Cir. 2001); *Miranda v. Wisconsin Power & Light Company*, 91 F.3d 1011, 1014 (7th Cir. 1996).**

Considering first DeSalvo's excessive force allegation, this Court notes again that the relevant inquiry is whether the amount of force used by an officer was constitutionally "reasonable." ***Graham,* 490 U.S. at 396.** Answering this question requires a balancing of the nature and quality of the intrusion on the individual's constitutional interests against the countervailing government interests at stake. ***Graham,* 490 U.S. at 396.** The evaluation of reasonableness, then, is clearly a question of fact – one that must be submitted to a jury to decide unless this Court is convinced that the record as a whole "could not lead a rational trier of fact to find for [DeSalvo]." ***Matsushita Elec.***

*Indus. Co. v. Zenith Radio Corp.,* **475 U.S. 574, 587 (1986).** Viewing the facts and drawing all reasonable inferences in favor of DeSalvo, this Court is *not* convinced that no reasonable jury could conclude that Krug used excessive force against DeSalvo.

According to DeSalvo's account of the underlying incident, DeSalvo simply inquired of Krug, as the crowd was disbursing, as to why an older man was being arrested. In response, Krug bent DeSalvo's arm behind his back, pushed DeSalvo into a squad car chest first, and hand-cuffed him. When Desalvo objected to being arrested, Krug tased him with a 50,000 volt taser with little, if any, warning. In addition to DeSalvo's own account of the incident, DeSalvo has presented testimony from a bystander asserting that DeSalvo did not swing at Krug, try to run away, or physically threaten anyone (Carpenter Dep. pp. 12-13). The amateur video of the incident (Exhibit H to Doc. 27) further reveals that DeSalvo was not physically resisting Krug prior to being tased, and at least three other officers were within five feet of DeSalvo.

The Court finds that a reasonable jury *could* find that Krug used excessive force against DeSalvo. Accordingly, summary judgment as to Krug is not appropriate.[2] The Court **DENIES** Krug's motion for summary judgment (Doc. 13).

### (2) DeSalvo's Claim Against Collinsville

In Count II of DeSalvo's complaint, he claims that the City of Collinsville, Illinois, is liable for the actions of Krug. Specifically, DeSalvo argues that Collinsville's failure to train its officers as to crowd control and taser use amounts to "deliberate indifference" towards the constitutional rights of its citizens that constitutes a "policy or custom" under which Krug was acting.

---

[2] Because, alone, the excessive force determination is enough for DeSalvo's claim to survive summary judgment, this Court need not consider, nor comment upon, the merits of DeSalvo's unlawful arrest allegation.

<u>APPLICABLE LEGAL PRINCIPLES</u>

Inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. ***City of Canton, Ohio v. Harris et al.,* 489 U.S. 378, 388 (1989).** "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* Deliberate indifference requires a showing of more than negligence or even gross negligence. *Id.* **at 388.**

In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. *Id.* **at 390.** That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city. *Id.* **at 391.** Moreover, for liability to attach in this circumstance, the identified deficiency in a city's training program must be closely related to the ultimate injury. *Id.* **at 391.**

*Summary Judgment Analysis*

As noted, summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **FED. R. CIV. P. 56(c).** Furthermore, because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. ***Oest v. IDOC,* 240 F.3d 605, 610 (7th Cir. 2001);** ***Moore v. J.B. Hunt Transport, Inc.,* 221 F.3d 944, 950 (7th Cir. 2000).**

DeSalvo has failed to present evidence that could allow a reasonable jury to find that

11

Collinsville's actions rose beyond the level of gross negligence to the level of deliberate indifference. Neither has Krug presented any evidence of an "affirmative link" between the City's alleged failure to train and the alleged constitutional violation. ***Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985).**

Although DeSalvo points out that Krug received no instruction in crowd control from the City of Collinsville, the record reveals that Krug had already received such instruction at the police academy he attended (Krug Dep. pp. 7-8). And although Collinsville may not have a *written* policy on crowd control, a fellow officer of Krug's, Eric Herman, testified that the City does have a policy concerning large-crowd events (Herman Dep. p. 17). The evidence further shows that Collinsville has in place a policy regarding taser use, "General Order 42" that specifies when a taser can and cannot be used against a suspect (Krug. Dep. pp. 38-40).

Additionally, Krug testified that he had received "a four-hour block of training on the taser's usage and the policy [regarding such usage]" (Krug. Dep. p. 7). Even viewed in the light most favorable to DeSalvo, this evidence does not reasonably support a finding that Collinsville was deliberately indifferent toward the constitutional rights of its citizens. No genuine issue of material fact exists as to DeSalvo's claims against Collinsville. The Court **GRANTS** Collinsville's motion for summary judgment (Doc. 15).

### D.      Summary

For the above-stated reasons, the Court **DENIES** Defendant Krug's motion for summary judgment (Doc. 13) and **GRANTS** Defendant Collinsville's motion for summary judgment (Doc. 15).

**IT IS SO ORDERED.**

**DATED this 7th day of October, 2005.**

> s/Michael J. Reagan
> **MICHAEL J. REAGAN**
> **United States District Judge**